**BYRD–FROST, Inc., et al. v. ELDER.**
No. 4932.

Court of Civil Appeals of Texas. Texarkana.
Feb. 29, 1936.

Rehearing Denied March 12, 1936.

Wynne & Wynne, of Longview, Margaret Clark, of Dallas, Campbell & Leak, of Longview, Wm. Hodges, of Texarkana, and G. R. Whittington, of Longview, for appellants.

Chauncey & Chauncey and Edwin Lacy, all of Longview, and Clyde Vinson, of San Angelo, for appellee.

JOHNSON, Chief Justice.

This is the second appeal of this cause, the former appeal is reported in Elder v. King, 69 S.W.(2d) 479, and the statement of the nature of the case is stated in that opinion by Judge Levy in a clear and concise manner and will be adopted by us in this opinion.

This case was tried to a jury on special issues which were answered favorably to appellee upon which the court entered judgment for appellee, and appellants prosecute their appeal to this court.

Appellants bring forward a number of assignments of error complaining of the argument of counsel of appellee in the court below. Even a casual examination of these assignments and the argument complained of convinces us that they present error in several instances which would necessitate a reversal of this case if the evidence on the whole presents a question to be determined by the jury. So, we shall discuss the facts as developed on this trial.

Joe King and his former wife, Katie Maulden, grantors, and Trip Elder, grantee, were the parties to the original transaction wherein Joe King and wife executed and delivered to Trip Elder the purported deed to 13½ acres of land in Gregg county, Tex. It appears from the record in this case that Joe King approached Trip Elder in the early part of 1927 in an effort to sell to Elder two tracts of land, one containing 20½ acres and the other 13½ acres, and on February 16, 1927, the deal was consummated and the deed from King and wife was signed and acknowledged before Roy Laird and delivered to Elder. The consideration for said deed was $450 cash, and the cancellation of an indebtedness owing by King and wife to Elder of $500. The deed was duly recorded in the Deed Records of Gregg county. In 1928 Elder conveyed the 20½ acres back to King for a consideration of $450. On the date of the first deed, that is, the deed from King and wife to Elder, King and his wife were separated and were later divorced. After the purported sale of the two tracts of land to Elder, Joe King left and went to Oklahoma and Arkansas. He later moved back on the land; renting it from Elder. After oil was discovered in the East Texas field, J. E. Bagwell leased the 13½-acre tract from Joe King and later assigned same to D. H. Byrd. Byrd assigned the leasehold on said land to Byrd-Frost, Inc. On the dates the lease and the assignments were executed Elder's deed to this land was on record. Charley Crum, now deceased, attorney for Byrd-Frost, Inc., some time in April, 1931, learned of the existence of

the recorded deed to Elder covering this 13½-acre tract, and soon thereafter secured a statement from Joe King, one of the grantors in said deed, asserting that the deed was in fact a mortgage given as security for borrowed money. After this affidavit was taken from Joe King, Elder was interviewed by Crum, Byrd, and Frost, and they testified on the trial of this case that Elder stated to them that the deed was in fact a mortgage. On the trial of the case King testified contrary to the statement theretofore made by him, stating that he did not make the settlements contained therein to the effect that the deed from him and wife to Elder was intended as a mortgage, but, on the contrary, said that the instrument was what it purported to be, a warranty deed. Likewise Elder as a witness in this case denied the statements attributed to him by Byrd, Frost, and Crum, and stated positively that the deed was not intended as a mortgage. The notary, Roy Laird, who wrote the deed and took King's and his wife's acknowledgments, testified as a witness in this case that he wrote the deed and that both King and his wife signed same before him as a notary and that he took their acknowledgments; that he explained same to both parties at the time they signed same, and told them that the deed was a conveyance of their property; that both King and wife said they understood the instrument; that Katie, the wife, was examined privily and apart from her husband; and that she said she willingly signed the deed and did not wish to retract it. Katie did not testify. So the only evidence, save and except the payment of taxes on this land by Joe King after he had sold same to Elder, upon which it is sought to have the deed to the 13½ acres declared a mortgage, is the purported admissions of Elder and Joe King, testified to by Byrd and Frost, parties at interest, now claiming to own the lease on this land, and their attorney, Charley Crum. On the other hand, Joe King, one of the grantors, Trip Elder, the grantee, and Roy Laird, the notary, all testified that the instrument in controversy is what it purports to be on its face, a warranty deed. In addition to this testimony, several witnesses testified that Katie stated repeatedly that she had sold the land in controversy, and had secured her portion of the money therefor. And, in addition to this, Joe King testified, as well as other parties, that he paid rent to Trip Elder for the land during the time he used and cultivated the same after he had conveyed it to Elder. On the former appeal of this case, Elder v. King, 69 S.W. (2d) 479, 481, Judge Levy, discussing the finding of the jury that the deed was understood by the parties thereto to be a mortgage, said:

"In view of the evidence in the record and upon due determination of weight and sufficiency, this court does not feel justified in exercising its power to approve and adopt as a fact the answer of the jury to question No. 1. The evidence in that respect is slight and conflicting and there is room to hesitate or doubt as to the existence of such ultimate fact. In our mind the answer must be considered as being against the weight of the evidence and upon that ground alone it is here disapproved and not adopted but is set aside. * * *

"The entire circumstances tending in contradiction of absolute conveyance consists in certain purported contradictory statements and the rendition for taxes of the 13½ acres of land by J. A. King, which latter act is explained apparently consistent with the deed. The character of the transaction was fixed in the beginning and the subsequent declarations of a party cannot change its character. These are nothing more than admissions which are admissible in evidence for what they are worth. Stripped of the contrary statements in evidence by J. A. King the evidence is slight as to the deed's being intended as a mortgage. To take the contrary statements of J. A. King as outweighing the other affirmative evidence would be to place great reliance on indefinite and inclusive evidence. It is the especial rule that the evidence relied upon for the purpose of affixing the character of a mortgage to an absolute deed must satisfy the high standard of probative force indicated by the expression, 'Clear, satisfactory and convincing.' Brewster v. Davis, 56 Tex. 478; Gazley v. Herring (Tex. Sup.) 17 S.W. 17; Muckelroy v. House, 21 Tex.Civ.App. 673, 52 S.W. 1038; Frazer v. Seureau, 60 Tex.Civ.App. 416, 128 S.W. 649. Other states, in annotation of rule, L.R.A.1916B, p. 192. There is authority for the rule, of necessity of sustaining the allegations of a mortgage by other testimony besides that merely of the grantor, in case that which was given conflicts in every important particular with that which was given by the other. Under such circumstances the testimony of one party is regarded as simply counter-

**1136**

balancing that of the other. L.R.A.1916B, p. 253."

In Howard v. Zimpelman, 14 S.W. 59, 62, Judge Gaines, speaking for the Supreme Court, says:

"It is against the policy of the law that a written instrument should be shown by parol testimony to have an effect different from that which its terms import, except upon very strong proof."

In the case of Callaway v. Snead, 33 S. W.(2d) 552, 555, Judge Hodges, speaking for this court, said:

"In cases of this character, the party who undertakes to ingraft a parol trust on a deed absolute in form has the burden of proving all the essential facts upon which he must rely, and the evidence must be clear and convincing." Miller v. Yturria, 69 Tex. 549, 7 S.W. 206; Gazley v. Herring (Tex.Sup.) 17 S.W. 17; Howard v. Zimpelman (Tex.Sup.) 14 S.W. 59.

The evidence of this case on the whole to the effect that the deed to the 13½ acres of land, absolute on its face, was intended by the parties thereto as a mortgage, in our opinion, falls short of the standard set by the law of this state in cases of this character. The evidence offered by appellants in this regard is neither strong, clear, nor convincing. In our opinion, the court should have peremptorily charged the jury to return a verdict for the appellee. This disposition of the case renders the assignments of error brought forward by appellants immaterial.

Therefore, the judgment of the trial court is affirmed.